Magistrate Judge David W. Christel

——— FILED ——— LODGED
——————— RECEIVED

Aug 04, 2025

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY ——————————————— DEPUTY

UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. MJ25-5305DWC |
| Plaintiff, | |
| | COMPLAINT for VIOLATION |
| v. | Title 18, United States Code, Section 922(g)(5) |
| JOSE FELIX GERMAN, | |
| Defendant. | |

BEFORE the Honorable David W. Christel, United States Magistrate Judge, U.S. Courthouse, Tacoma, Washington.

The undersigned complainant being duly sworn states:

## COUNT 1

**(Alien in Possession of a Firearm)**

On or about August 4, 2025, in King County, within the Western District of Washington, and elsewhere, JOSE FELIX GERMAN, knowing that he was an alien illegally and unlawfully in the United States, did knowingly possess, in and affecting interstate and foreign commerce, a firearm, that is: a Sig Sauer P 365 9mm pistol with an

Complaint - 1
*United States v. Jose Felix German*
USAO # 2022R01047

obliterated serial number, that has been shipped and transported in interstate and foreign commerce.

All in violation of Title 18, United States Code, Section 922(g)(5).

And the complainant states that this Complaint is based on the following information:

I, Daniel Richter, being first duly sworn on oath, depose and say:

**AFFIANT BACKGROUND AND EXPERIENCE**

1.     I am a Special Agent of the Drug Enforcement Administration (DEA), currently assigned to the DEA Tacoma Resident Office (TRO) in the Seattle Field Division. I am a criminal investigator of the United States within the definition of 18 U.S.C. § 2510(7) and am empowered by law to conduct investigations and to make arrests for offenses enumerated in Title 21 and Title 18 United States Code.

2.     I have been a DEA Special Agent (SA) since August 2021. I received formal training at the DEA Basic Agent Training in Quantico, Virginia. The four-month Basic Academy included comprehensive, formalized instruction in, among other things: basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations.

3.     Prior to my employment with the DEA, I worked as a Uniformed Officer, Narcotics Detective, and Sergeant with the Michigan State Police from October 2012 to August 2021. Throughout my employment with Michigan State Police, I received numerous training courses focusing on narcotics investigations and narcotics identification. I obtained training through the DEA on clandestine manufacturing of methamphetamine, fentanyl, 4-Methylenediozymethamphetamine (MDMA), Phenyl cyclohexyl piperidine (PCP), and marijuana extractions.

Complaint - 2
*United States v. Jose Felix German*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

4.    During the course of my law enforcement career, I have been involved in investigations of numerous criminal offenses, including the offenses involved in the current investigation. I have participated in criminal investigations of illicit drug trafficking organizations, ranging from street-level dealers to major dealers, to include drug trafficking organizations linked to Mexico-based organizations. These investigations have also included the unlawful importation, possession with intent to distribute, and distribution of controlled substances; the related laundering of monetary instruments; the conducting of monetary transactions involving the proceeds of specified unlawful activities; and conspiracies associated with criminal narcotics offenses. These investigations have included use of the following investigative techniques: confidential informants; undercover agents; analysis of pen register and toll records; physical and electronic surveillance; wiretaps; and the execution of search warrants. I have also interviewed defendants at the time of their arrests and have debriefed, spoken with, or interviewed numerous drug dealers or confidential sources (informants) at proffer interviews who were experienced in speaking in coded conversations over the telephone. I have gained knowledge regarding the various methods, techniques, codes, and/or jargon used by drug traffickers in the course of their criminal activities, including their use of cellular telephones and other electronic devices to facilitate communications while avoiding law enforcement scrutiny.

5.    The facts set forth in this Affidavit are based on my own personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including other law enforcement personnel; review of documents and records related to this investigation; communications with others who have personal knowledge of the events and circumstances described herein; and information gained through my training and experience. Because this Affidavit is submitted for the limited purpose of establishing probable cause in support of the Application for a search warrant and pen register/trap and trace device, it does not set forth each and every fact that I or

Complaint - 3
*United States v. Jose Felix German*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

others have learned during the course of this investigation.

**PROBABLE CAUSE**

6.    In September of 2022, the DEA began conducting a criminal investigation of a Mexican drug trafficking organization (DTO) operating out of Tacoma, Washington with ties to Nevada, Oregon, and California, regarding possible violations of 21 U.S.C. §§ 841(a)(1) and 846. Agents believed this DTO and its members were responsible for distributing methamphetamine and cocaine in the Western District of Washington and elsewhere. As the investigation progressed, investigators identified two brothers, Rosario and Francisco CAMARGO BANUELOS, as leaders of the DTO who coordinated drug trafficking taking place in the Western District of Washington and elsewhere. The DTO is referred to herein as the CAMARGO BANUELOS DTO.

7.    On June 25, 2025, a Grand Jury in the Western District of Washington indicted several members of the CAMARGO BANUELOS DTO.

8.    On July 30, 2025, agents obtained a search warrant to search 203 SW 118th St, Seattle, WA 98146 (hereinafter Target Residence). Agents believed this residence was being used by individuals involved in money laundering for the CAMARGO BANUELOS DTO.

9.    On March 27, 2025, after a successful controlled buy with Jorge BONEO NIEBLAS, a drug distributor for the DTO, agents observed BONEO NIEBLAS drive to the area of 220 SW 119th St, Seattle, WA, approximately one block away from the Target Residence. Surveillance observed BONEO NIEBLAS park next to another white vehicle (referred to hereafter as the Target Vehicle or TV20) in the middle of the roadway. Surveillance also observed BONEO NIBELAS park driver's door to driver's door with this vehicle briefly and then they separated. Surveillance observed TV20 bore Washington License plate CHW8158.

10.    This short meeting between BONEO NIEBLAS and the driver of the TV20 was consistent with numerous examples I have uncovered in this investigation of DTO

Complaint - 4
*United States v. Jose Felix German*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

workers, such as BONEO NIEBLAS, driving to meet with other individuals for brief periods before separating, for the purpose of conducting a drug transaction or an exchange of drug proceeds. In this instance, I believe BONEO NIEBLAS likely met with the driver of the TV20 to drop off drug proceeds, including the $5,500 received from the undercover agent during the controlled buy, to the driver of the TV20, near the residence.

11.    Agents obtained a search warrant for location data related to a cell phone being used by Kevin MISACANGO SOLANO, another DTO distributor. Agents began collecting location information after April 17, 2025. Agents observed MISACANGO SOLANO's cell phone in the area of the Target Residence. TV20, the car BONEO NIEBLAS was observed meeting with on March 27, 2025, for a suspected money drop, was parked at the Target Residence. Surveillance also observed a Hispanic male operating TV20. Through the use of investigative tools, agents learned that the Hispanic male recently sent money transfers to Mexico in his name and using MISACANGO SOLANO's associated phone number. Based on my training, experience, and knowledge of this investigation, these money transfers are consistent with the types of money transfers used by DTO money couriers to send drug trafficking proceeds to DTO leaders based in Mexico.

12.    On June 17, 2025, I was conducting toll analysis on R. CAMARGO BANUELOS' TT93. I observed that it had recent communications with phone number (559) 509-3070. Through open-source information, I found this phone number was linked to the Target Residence. I observed that it was in the name of "Julian Rojo" and displayed it was registered to 203 SW 118th St, WA (the Target Residence). I recognized this name as a registered owner of a vehicle that is generally parked at the Target Residence. Through prior surveillance, I observed a California plated Jeep at the residence that was found to be registered to Julian Rojo Gaxiola.

13.    Additionally, I found that this phone number had communications with others with this investigation. I observed that phone number (559) 509-3070 had

Complaint - 5
*United States v. Jose Felix German*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

previously talked to an unindicted coconspirator also believed to be laundering money on behalf of the DTO. Agents previously conducted a traffic stop on the unindicted coconspirator after he was observed meeting Juan Carlos GARCIA OLAIS, another DTO drug distributor. Following this meeting, the unindicted coconspirator was found in possession of $50,492.00 in U.S. currency. Based on my training and experience, and knowledge of this investigation, I believe that this unindicted coconspirator was acting as a money courier in a manner similar for the DTO. The U.S. currency was rolled in 5,000-dollar increments. DTOs will often utilize organizations that specifically specialize in laundering money to assist with transferring this illicit drug proceeds from the United States back to Mexico.

14.     A review of the unindicted coconspirator's phone showed that on June 29, 2024, he sent a photograph of a Bank of America checking account information with the name "Jose Felix Germain" to phone number (559) 509-3070. Shortly after, the unindicted coconspirator sent another photo to the same phone number showing a cash deposit to that same account for $4,000 U.S. dollars.

15.     Based on my training and experience, and knowledge of this investigation, there have been continuous instances linking the occupants of the Target Residence to money laundering activities. During a search of an unindicted coconspirator's phone, he appeared to be acting as a money courier by continuously being directed to pick up bulk currency and conduct wire transfers to bank accounts. One of the phone numbers that had previously directed the unindicted coconspirator was (559) 509-3070, which was registered to the Target Residence. Since then, (559) 509-3070 has also communicated with Rosario CAMARGO BANUELOS.

16.     On August 4, 2025, agents executed a search warrant on the Target Residence. Jose Felix GERMAN was located inside the Target Residence. GERMAN was found in possession of a cell phone associated with phone number (559) 509-3070. GERMAN identified the phone as belonging to him.

Complaint - 6
*United States v. Jose Felix German*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

17.     A firearm, a Sig Sauer P 365 9mm pistol, was recovered from GERMAN's bedroom. GERMAN was provided his *Miranda* warning, after which he admitted that he purchased the firearm approximately a year and a half ago, and that he was from Los Mochi, Sinaloa.

18.     Agents conducted a record search on GERMAN and determined that GERMAN did not hold legal status in the United States. According to database record checks, GERMAN previously entered the United States on April 4, 2013, and was removed on April 5, 2013, in San Luis, Arizona, returning to Mexico on April 18, 2013.

19.     There is no record of GERMAN lawfully entering or applying for admission to the United States since his removal in April 2013.

### CONCLUSION

20.     Based on the above facts, I believe probable cause exists that Jose Felix GERMAN knowing that he was an alien illegally and unlawfully in the United States, did knowingly possess, in and affecting interstate and foreign commerce, a firearm, in violation of Title 18, United States Code, Sections 922(g)(5).

DAN RICHTER, Complainant
Special Agent
Drug Enforcement Administration

Based on the Complaint and Affidavit sworn to me via reliable electronic means, the Court hereby finds that there is probable cause to believe the defendant committed the offense set forth in the Complaint.

Dated this 4th day of August, 2025.

DAVID W. CHRISTEL
United States Magistrate Judge

Complaint - 7
*United States v. Jose Felix German*
USAO # 2022R01047

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800